```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      SOUTHERN DIVISION at PIKEVILLE
```

LINDA JONES,                         )
                                     )
    Plaintiff,                      )
                                     )       Civil Action No.
v.                                   )       7:14-CV-36-JMH
                                     )
CAROLYN W. COLVIN, ACTING            )       **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL               )            **AND ORDER**
SECURITY,                            )
                                     )
    Defendant.                      )

                        \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [DE 10, 11] on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits.[1] On September 20, 2014, Plaintiff filed a response to the Commissioner's motion. [DE 12]. For the reasons discussed below, the Commissioner's motion will be granted and Plaintiff's motion will be denied.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge (ALJ), in determining disability, must conduct a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 summary judgment motions. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id*. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

The ALJ determined that Mullins had not engaged in substantial gainful activity since June 4, 2010 [Tr. 22]. Considering step two, the ALJ found that Mullins possessed the

severe impairments of cirrhosis of the liver and obesity. During step three of the analysis, the ALJ concluded that none of Mullins's impairments or combinations of impairments met the severity listed in 20 C.F.R. pt. 404, subpt. P, app. 1 [Tr. 23]. At step four, the ALJ determined that Mullins had a residual functional capacity (RFC) to perform light work as defined by 20 C.F.R. §§ 404.1567(b). However, Mullins was limited to lifting and carry twenty pounds occasionally and ten pounds frequently; standing or walking six hours in an eight-hour workday; sitting up to six hours in an eight-hour workday; only occasional climbing of stairs or ramps; never climbing ladders, ropes or scaffolds; no more than frequent stooping, kneeling, balancing, or crouching; and occasional crawling. [Tr. 25]. Based on this RFC, the ALJ found that Mullins was able to perform her past relevant work as an apartment manager. [Tr. 27]. Accordingly, he concluded, Mullins was not disabled as defined in the Social Security Act.

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence for various reasons. She contends that the ALJ erred by giving controlling weight to his own medical opinion and by relying upon the opinions of non-treating sources, which were not supported by medical evidence. Additionally, she argues that the ALJ erred in failing to

consider Mullins's dyspnea and chronic fatigue and did not give good reasons for rejecting the opinions of treating healthcare providers. Finally, she argues that the ALJ was biased against Mullins based on his alleged dislike of the individual who represented Mullins at her hearing.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. BACKGROUND**

Olive Mullins applied for disability insurance benefits on April 15, 2010, alleging that her disability began on January 4, 2010. Following the denial of her claim, an Administrative Law Judge ("ALJ") held a hearing on May 15, 2012. [Tr. 33]. The ALJ denied Mullins's claim on June 1, 2012. Denial was affirmed by the Appeals Council on February 7, 2014. Ms. Mullins passed away on December 14, 2012, and she is represented in this claim by her daughter and administrator of her estate, Linda Jones.

At the time of the ALJ's decision, Mullins was sixty-four years of age. [Tr. 42]. From 1994 to 2010, Mullins was employed as a manager at an apartment complex, where she performed mostly office work such as contacting potential tenants, accepting rent payments, and handling complaints. Office work comprised nearly all of Mullins's shift, but she testified that she often went up and down stairs and to different apartments. [Tr. 44-45]. She reported that, at the time she quit working at the apartment complex, the most weight she was required to lift was five pounds. [Tr. 47].

In early 2010, Mullins was diagnosed with cirrhosis of the liver. [Tr. 321]. Dr. Castellanos, a gastroenterologist, treated Mullins for her liver conditions, but did not provide an

5

opinion as to Mullins's impairments. In March 2010, a liver biopsy revealed that Mullins had cirrhosis with mild inflammatory changes, consistent with nonalcoholic steatohepatitis. [Tr. 479]. Dr. Castellanos thought that Mullins was a good candidate for a liver transplant and referred her to the University of Kentucky Transplant Center. Dr. Hundley, the physician at the transplant center, agreed that Mullins was a good candidate for a transplant. Mullins never underwent a transplant, however. She reports that the University of Kentucky discontinued her treatment because she did not have medical insurance.

Mullins received treatment at Knott County Family Healthcare by Physician's Assistant Kevin Davis for the ten years before her death. [Tr. 79]. The administrative record contains several treatment notes written by Davis, ranging from early 2009 to April 2012, when Davis performed a "physical for insurance purposes." Treatment notes indicate that Mullins was seen for various issues over the years, including hypertension, bronchitis, diabetes, and abdominal pain. On April 3, 2012, Davis performed a physical assessment in support of Mullins's claim for Social Security benefits. In the report, Davis indicated that Mullins had unspecified tenderness, weight change, and subjective swelling. He opined that her illnesses

6

often interfered with her ability to concentrate, as well as her physical function. He determined that Mullins could stand or walk for less than two hours per day and that she could sit for about two hours. Further, he opined that she could occasionally lift less than five pounds, but never more than five pounds. Additionally, he concluded that her legs should be elevated with prolonged sitting and that she could never climb, stoop, or crawl.

On January 26, 2011, Mullins underwent a consultative examination by Dr. William Waltrip. Dr. Waltrip noted that Mullins complained of lethargy, which she speculated was secondary to her liver disease. [Tr. 401]. Dr. Waltrip tested Mullins's range of motion, which was normal. He noted that she did not use any assistive devices and that her gait was normal. [Tr. 402]. Ultimately, Dr. Waltrip determined that Mullins's only limiting factor was her claim of loss of energy and lethargy. [Tr. 403]. He opined that she could walk moderate distances, and could stand and sit with very little limitation. He cautioned, however, that Mullins might have difficulty lifting heavy objects, but observed that she had good grip strength and could perform fine and gross manipulations.

On February 9, 2011, Dr. Sudhideb Mukherjee reviewed Mullins's medical records and provided his assessment. [Tr.

7

85]. He determined that she could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds. He believed that she could stand, walk, or sit about six hours in an eight-hour workday. Although he determined that she should never climb ladders, ropes, or scaffolds, there was no limitation on her ability to climb stairs or to balance, stoop, kneel, or crouch. He added that the reason for these "postural limitations" was Mullins's back pain. He also determined that she had a normal gait and could walk moderate distances. [Tr. 87].

Mullins described her limitations during her hearing with the ALJ. She stated that the issue with her liver was her major problem and reported daily intermittent stabbing pain in her rib area as a result of it. [Tr. 55]. She reported that she could walk for about two minutes before stopping. [Tr. 56]. She stated that her doctors have recommended walking as exercise, but that she was unable to do it due to problems breathing, which she believed were caused by cirrhosis. [Tr. 57]. She reported that she could stand for five or ten minutes and often could not bend or stoop due to fluid buildup. She had had fluid withdrawn five weeks prior to the hearing and reported that she was told it would probably have to be done every couple of months. She reported that the maximum weight she could pick up

off a table was five to six pounds and that she could sit for thirty minutes without having to change positions. [Tr. 59].

The ALJ concluded that while Mullins had the severe impairments of cirrhosis of the liver and obesity, her impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. [Tr. 23]. He adopted, in large part, the residual functional capacity suggested by consulting physician Dr. Mukherjee, but imposed the additional limitations of only occasional climbing of stairs and ramps and no more than frequent stooping, kneeling, balancing, crouching, and occasional crawling. In making his determination, the ALJ considered, but did not accept, the opinion of Physician's Assistant Kevin Davis. [Tr. 27]. In rejecting Davis's opinion, the ALJ noted that the opinion was not supported by the physical findings he reported in the evaluation—tenderness, subjective swelling, and weight change. *Id.* The ALJ gave great weight to the opinions of Dr. Waltrip and Dr. Mukherjee. Both doctors determined that, based on Mullins's early-stage cirrhosis, she might have lethargy or loss of energy, but she had no other limiting factor.

## IV. ANALYSIS

### A. The Commissioner's Decision Is Supported By Substantial Evidence

The only treating source that provided an opinion in this case is Physician's Assistant Kevin Davis. The Social Security regulations make clear that physician's assistants are not "acceptable medical sources," but, rather, "other sources" whose opinions must be considered. 20 C.F.R. § 404.1513(d). The ALJ decision reveals that the ALJ considered Davis's opinion, but gave good reasons for rejecting it. [Tr. 27]. Davis reported diagnoses of hypertension, cirrhosis, and diabetes, and noted objective findings of "tenderness," weight change, and subjective swelling. He went on to conclude that Mullins's activity should be extremely limited but, as the ALJ noted, did not support his recommendations with objective evidence. Further, the limitations are not supported by the medical evidence of record. In early 2010, Mullins was hospitalized for confusion and jaundice, but there is no evidence that these problems persisted beyond that limited time frame. Mullins also complained of shortness of breath secondary to cirrhosis, but there is no objective evidence supporting her claim of pulmonary dysfunction.

The ALJ gave great weight to the opinions of non-treating sources, Dr. Waltrip and Dr. Mukherjee. Dr. Waltrip recorded

Mullins's vital signs and described her as moderately obese. [Tr. 401]. He noted that she had no evidence of jaundice and that her abdomen was obese, but nontender, with no palpable masses. Mullins's range of motion was found to be normal throughout her spine and extremities. Her gait was normal, and she did not use an assistive device. Dr. Waltrip had Mullins perform "heel-to-walk," tandem walking, walking on the tips of her toes, and on her heels—all of which she was able to perform. She was also able to squat and had no loss of sensation. *Id.* He concluded that Mullins's claim of lethargy might impact her function but, based on the objective testing performed during the examination, that would be her only limiting factor.

Dr. Mukherjee also found that Mullins's primary limiting factor was loss of energy. [Tr. 85]. He noted that she had had no recurrence of supraventricular tachycardia since March 2010. He acknowledged that Mullins suffered from low back pain, uterine fibroids, and a history of frequent urinary tract infections, but concluded that those problems did not limit her ability to function at the time. Dr. Mukherjee noted that an x-ray of Mullins's lumbar spine showed good alignment and that the disc spaces and SI joint were preserved. Finding that her strength and range of motion were within normal limits, he concluded that Mullins could occasionally lift or carry twenty

11

pounds and could frequently lift or carry ten pounds. He opined that she could stand or walk six hours in an eight-hour workday and that she could sit for about six hours, as well. [Tr. 85]. He also determined that she had an unlimited ability to climb stairs.

The ALJ's decision to give these opinions controlling weight is supported by substantial evidence in the record. Medical records indicate that Mullins's hyptertension was stable and that she was not having any heart problems at the time of the ALJ's decision. Despite her complaints of low back pain, the x-ray of her lumbar spine was unremarkable. Dr. Waltrip's examination revealed normal range of motion, strength, and gait. While she did experience an episode of confusion in early 2010, the record indicates that this was due to high blood ammonia levels, caused by her cirrhosis, which was undiagnosed until that time. [Tr. 301]. There is no evidence of any subsequent episode of confusion. Plaintiff contends that the ALJ arbitrarily chose portions of the record upon which to rely, but does not identify which portions he failed to consider. Contrary to Plaintiff's assertion, on page seven of the ALJ's decision, he acknowledged Mullins's complaints of dyspnea. Plaintiff has failed to identify any objective medical evidence of record, however, that the ALJ should have considered with

12

respect to dyspnea. The Court notes that when Dr. Waltrip examined Mullins, her oxygen saturation was ninety-eight percent. Plaintiff also argues that the ALJ did not consider Mullins's "chronic fatigue." Both Dr. Waltrip and Dr. Mukherjee identified fatigue or lethargy as Mullins's primary limiting factor, and the ALJ opinion reflects that this was taken into consideration.

Plaintiff argues that the ALJ gave controlling weight to his own medical opinion, contrary to *Gayheart v. Commissioner of Social Security,* 710 F.3d 365 (6th Cir. 2013). Specifically, Plaintiff argues that the ALJ erred in determining that Mullins's liver disease was in its early stages. Regardless of the terminology used, however, it is clear from the ALJ's analysis that Mullins's liver disease did not meet or medically equal the severity required for chronic liver disease under 20 C.F.R. Part 404, Subpart P, Appendix 1. The Court was unable to locate in the record, and Plaintiff has not pointed out, any evidence of: hemorrhaging from esophageal, gastric, or ectopic varices or from hypertensive gastrophy; ascites or hydrothorax present on two evaluations at least sixty days apart within a six-month period; spontaneous bacterial peritonitis; hepatorenal syndrome; hepatopulmonary syndrome; hepatic encephalopathy present on at least two evaluations; or end stage liver disease.

13

Plaintiff relies heavily upon the fact that doctors at the University of Kentucky believed that Mullins was a good candidate for liver transplant. Plaintiff provides no authority, however, to establish that this meant that Mullins had end stage liver disease. Accordingly, there is no evidence that the ALJ formulated his own medical opinion with respect to Mullins's cirrhosis.

### B. Plaintiff Has Not Established Bias

Finally, Plaintiff suggests that the ALJ was biased when deciding Mullins's claim based on his "apparent dislike" of Mullins's non-attorney representative. The Court has reviewed the hearing transcript in this matter and finds no evidence of impropriety on the ALJ's part. The ALJ allowed the representative to make an opening statement and asked for clarification when he did not understand the purpose of what the representative was saying. [Tr. 38]. At another point, after the representative interjected during the ALJ's examination of Mullins, the ALJ suggested that she not interrupt and told her that she would have her own uninterrupted time to examine Mullins. The Court is required to start with the presumption that administrative adjudicators are unbiased—it is the Plaintiff's burden to provide "convincing evidence that a risk of actual bias or prejudgment is present." *Navistar Int'l*

*Transsp. Corp. v. EPA,* 941 F.2d 1339, 1360 (6th Cir. 1991). These comments do not constitute such evidence. *See Karnofel v. Comm'r of Soc. Sec.,* 518 F. App'x 455, 456 (6th Cir. 2013) (citing *Navistar,* 941 F.2d at 1360) ("[A]ny alleged prejudice on the part of the decisionmaker must be evidence from the record and cannot be based on speculation or inference.").

**V.  CONCLUSION**

Accordingly, **IT IS ORDERED:**

(1) that the Commissioner's motion for summary judgment, [DE 11], is **GRANTED;** and

(2) that Plaintiff's motion for summary judgment, [DE 10], is **DENIED.**

This the 22nd day of September, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge